# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

Keaston D. Kinard,

                              Plaintiff,

        v.

Bryan P. Stirling, Michael McCall, Dennis
Patterson, Colie L. Rushton, Joseph Stines,
Aaron Joyner, Edward Tisdale, Jr., Kenneth
Sharp, Sam Ray, Arenda Thomas, Annie
McCullough, Quanda Abrams, Cynthia Petty,
Raymond Johnson, Michael Beady, Mark
Hatton, Nicholas Marquez, Mark Bethea,
Venyke Smith, Elsie Pressley, Clive Lopez,
Chelsea Mingo and Emily Anderson,

                              Defendants.

## COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff named herein complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## JURISDICTION AND VENUE

1.      This action is an action for money damages brought pursuant to 42 U.S.C. § 1983, et seq., and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against Defendants.

2.      Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. § 1331; 28 U.S.C. § 1367 (a), (b), (c), (d); 28 U.S.C. § 1343; and 28 U.S.C. §§ 2201 and 2202.

1

3.      The allegations set forth in this Complaint occurred in Lee County, South Carolina; therefore, venue is proper in this District.

**PARTIES**

4.      Plaintiff Keaston D. Kinard is a citizen and resident of the State of South Carolina.

5.      At all times mentioned in the Complaint, the Defendant Bryan P. Stirling was the Director of the South Carolina Department of Corrections ("SCDC"). At all relevant times hereinafter mentioned, Director Stirling was acting individually as an employee and/or administrator of the SCDC, including Lee Correctional Institution ("Lee CI"). Additionally, Director Stirling was in charge of the specific operations for all SCDC facilities, including Lee CI. For purposes of claims asserted under 42 U.S.C. § 1983, Director Stirling is being sued in his individual capacity under the color of state law. Upon information and belief, Director Stirling had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised other Defendants who had direct contact with Plaintiff or had knowledge of the above.

6.      During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Director Stirling, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Director Stirling had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Director Stirling to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by

2

him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

7.       Upon information and belief and during the relevant time period, Defendant Michael McCall was the Deputy Director of Operations of SCDC. At all relevant times hereinafter mentioned, McCall was acting individually as an employee and/or administrator of SCDC, including Lee CI. For purposes of claims asserted under 42 U.S.C. § 1983, McCall is being sued in his individual capacity under the color of state law. Upon information and belief, Mr. McCall had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

8.       During the time period in question, Plaintiff's Constitutional rights were well established and well known to McCall, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, McCall had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of McCall to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

9.       Upon information and belief and during the relevant time period, Defendant Dennis Patterson was the Assistant Deputy Director of Operations of SCDC. At all relevant times hereinafter mentioned, Patterson was acting individually as an employee and/or administrator of SCDC, including Lee CI. For purposes of claims asserted under 42 U.S.C. §

3

1983, Patterson is being sued in his individual capacity under the color of state law. Upon information and belief, Patterson had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

10.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Patterson, including, and not limited to, the Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment.  Additionally, Patterson had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of Patterson to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

11.     Upon information and belief and during the relevant time period, Defendant Colie L. Rushton was the Director of the Division of Security for SCDC.  At all relevant times hereinafter, mentioned Rushton was acting individually as an employee and/or administrator of the SCDC, including Lee CI.  For purposes of claims asserted under 42 U.S.C. § 1983, Rushton is being sued in his individual capacity under the color of state law.  Upon information and belief, Rushton had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, and supervised others who had direct contact with Plaintiff or had knowledge of the above.

4

12.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to Rushton, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Rushton had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff. Further, the response of Rushton to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by Plaintiff.

13.     Upon information and belief and during the relevant time period, Defendant Joseph Stines was the Director of Special Projects – Operations of SCDC. At all relevant times hereinafter mentioned, Stines was acting individually as an employee and/or administrator of the SCDC, including Lee CI. For purposes of claims asserted under 42 U.S.C. § 1983, Stines is being sued in his individual capacity under the color of state law. Upon information and belief, Stines had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to the Plaintiff, and supervised others who had direct contact with the Plaintiff or had knowledge of the above.

14.     During the time period in question, Plaintiff's Constitutional rights were well established and well known to Stines, including, and not limited to, Plaintiff's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. Additionally, Stines had actual and/or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to

Plaintiff. Further, the response of Stines to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by him as alleged herein; and there was a causal link between his actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

15.     At all times mentioned in the Complaint, Defendants Aaron Joyner (Warden at Lee Correctional Institution), Edward Tisdale, Jr. (Associate Warden at Lee CI), Kenneth Sharp (Associate Warden at Lee CI), Sam Ray (Major at Lee CI), Arenda Thomas (Captain at Lee CI), Annie McCullough (Captain at Lee CI), Quanda Abrams (Lieutenant at Lee CI), Cynthia Petty (Lieutenant at Lee CI), Raymond Johnson (Lieutenant at Lee CI), Michael Beady (Lieutenant at Lee CI), Mark Hatton (Lieutenant at Lee CI), Nicholas Marquez (Lieutenant at Lee CI), Mark Bethea (Lieutenant at Lee CI), Venyke Smith (Lieutenant at Lee CI), Elsie Pressley (Sergeant at Lee CI), Clive Lopez (Correctional Officer at Lee CI), Chelsea Mingo (Correctional Officer at Lee CI), and Emily Anderson (Correctional Officer at Lee CI), were supervisors, administrators, and/or employees of SCDC, some of whom who supervised other employees at the Lee Correctional Institution. At all relevant times hereinafter mentioned, these Defendants were acting individually as employees and/or administrators of SCDC. For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity under the color of state law. Upon information and belief, these Defendants had direct contact with Plaintiff, had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the substantial risk of serious harm to Plaintiff, or supervised other Defendants who had direct knowledge of the above. These Defendants had the obligation and opportunity to protect Plaintiff from physical harm.

16.     At all times mentioned in the Complaint, and upon information and belief, Defendants Aaron Joyner (Warden at Lee Correctional Institution), Edward Tisdale, Jr. (Associate Warden at Lee CI), Annie McCullough (Captain at Lee CI), Cynthia Petty (Lieutenant at Lee CI), Raymond Johnson (Lieutenant at Lee CI), Michael Beady (Lieutenant at Lee CI), Elsie Pressley (Sergeant at Lee CI), Clive Lopez (Correctional Officer at Lee CI), Chelsea Mingo (Correctional Officer at Lee CI), and Emily Anderson (Correctional Officer at Lee CI), were on duty or present on April 15-16, 2018, when the murders and assaults occurred at Lee CI.

17.     During the relevant time period, Plaintiff's Constitutional rights were well established and well known to each of the Defendants listed above, including, and not limited to, Plaintiff's right to due process and his right to be free from cruel and unusual punishment. Additionally, these Defendants had actual and/or constructive knowledge that they and their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to Plaintiff.  Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by Plaintiff.  A more detailed description of their contact with the Plaintiff and knowledge of the substantial risks are set out below.

## FACTS

18.     Prison officials and employees have a federal constitutional duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners.  Plaintiff is informed and believes that (a) prison officials knew that Plaintiff was exposed to a

substantial risk of serious harm to his physical safety; (b) Defendants failed to take reasonable measures to abate the risk; and (c) Plaintiff suffered serious injuries as a direct result thereof.

19.    Plaintiff is informed and believes that the employees of SCDC and staff at Lee CI (including, but not limited to, Bryan P. Stirling, Michael McCall, Dennis Patterson, Colie L. Rushton, Joseph Stines, Aaron Joyner, Edward Tisdale, Jr., Kenneth Sharp, Sam Ray, Arenda Thomas, Annie McCullough, Quanda Abrams, Cynthia Petty, Raymond Johnson, Michael Beady, Mark Hatton, Nicholas Marquez, Mark Bethea, Venyke Smith, Elsie Pressley, Clive Lopez, Chelsea Mingo and Emily Anderson), who knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the inmate population, had entered into a pattern and practice of:

 a. Routinely and regularly understaffing the prison by failing to provide an adequate or specific number of properly trained officers at numerous locations throughout Lee CI;

 b. Routinely and regularly allowing unlimited exposure to illegal contraband, including cell phones and weapons, by failing to enforce policies and procedures against the possession of contraband and failing to conduct regular or random searches of cells and units for contraband;

 c. Routinely and regularly allowing unlimited exposure to cell and unit doors which for six years or more did not lock properly and could not be secured;

 d. Routinely and regularly failing to properly conduct roll call counts of inmates;

 e. Routinely and regularly failing to properly monitor the movement and location of inmates throughout the prison;

    f.   Routinely and regularly allowing an environment in which inmates essentially ran the prison and moved about between cells and units as freely as they wished, at times even directing officers not to enter units or certain areas of the prison;

    g.   From October to December 2017, transferring more than 250 inmates from McCormick and Broad River Correctional Institutions to Lee CI, who were predominantly Security Threat Group (STG) members with documented records of violence, gang membership and disciplinary issues; and

    h.   Failing to recognize when an inmate (such as Plaintiff) required emergency medical care due to severe injury.

20.    A Security Audit commissioned by SCDC and performed by the United States Department of Justice's National Institute of Corrections in 2015 documented that Lee CI had a volatile history and was believed to be the state's most dangerous prison. The audit stated that since 2010, inmates had taken over portions of Lee CI twice, the prison was the scene of at least three hostage situations and had at least four significant disturbances. At the time of the Audit, Lee CI had approximately 63 security staff vacancies with a vacancy rate ranging from 23% to 30%. According to the audit, the staffing issues and shortages led to many problems, including frequent lockdowns of housing units which increased tension among the inmate population and caused the heightened potential for violence. The audit pointed out that regular and routine contraband searches were not being conducted by staff. This lack of action left the facility open and vulnerable to inmates having various types of contraband, including shanks, knives, illegal drugs and cell phones. This also created dangerous conditions for the inmate population. The Audit pointed out that the video camera system was deficient and that the cell doors located in the F5 unit were malfunctioning and could not be safely locked.

Lastly, the audit pointed out that because of understaffing, only one officer was working many different units in direct and conscious violation of SCDC policies and procedures. The findings contained in this audit and the factual circumstances it described were well known to the administrative and operations staff, including Defendants Stirling, McCall, Patterson, Rushton and Stines.

21.    During the relevant time period, Lee CI was classified as a Level Three correctional institution denoting that it is a maximum-security facility housing the most dangerous inmates.  Additionally, prior to the events involved in this incident, Lee CI had a long history of overcrowding and failure to provide adequate security and supervision over the inmate population located at the facility.  These circumstances were well known to all named Defendants.  Specifically, just prior to and during the time period in question, Defendants consciously failed to provide the adequate and/or proper numbers of adequately trained security personnel at numerous locations throughout Lee CI.

22.    Plaintiff is informed and believes that Lee CI had an authorized strength requirement – number of security positions identified to operate the facility safely – of 290 security staff level employees based on assessment and reporting commissioned by SCDC. In 2017, Lee CI only had 169 of these positions filled.  Further, upon information and belief, just prior to the time in question (specifically from July 2017 through February 2018) Lee Correctional had an 86% vacancy in front-line positions, which included positions with the most frequent direct contact with inmates such as post assignments in housing units, transportation, yard, inmate escorts, and direct security within a specific area.  In total, when considering overall security staffing levels, Lee CI in July-December 2017 was operating at approximately 69.6% of the approved 260 full-time equivalent positions.  This extremely

deficient staffing level continued into 2018 and, as a result, Lee CI consistently operated without all required security officer assignments being filled, according to a security staffing assessment commissioned by SCDC. Prior to the incident in question, all of the Defendants were aware of this deficit and knew that their conscious failure to provide proper staffing and adequate security measures would result in unsafe conditions for the inmate population – to include the type of event which occurred on April 15, 2018. involving Plaintiff.

23.     Before April 2018, it was well known to all Defendants that a large percentage of the inmate population carried or had access to weapons, including shanks, to inflict physical harm. Despite this knowledge, all Defendants consciously failed to take any reasonable actions to limit contraband including shanks and cell phones. Further, Defendants knew and/or should have known that their conscious failure to take actions to keep out or remove the contraband would result in unsafe conditions for the inmate population.

24.     Based on the above knowledge of all the Defendants with regard to Lee CI, on or about October 24, 2017, Defendants Stirling, McCall, Patterson, Rushton and Stines (as the "Operations Staff") made the executive decision to order the F3 Unit of Lee CI East Yard be vacated in order to make room for a large group of inmates from McCormick and Broad River Correctional Institutions. At the time, the F3 Unit was used as an Addiction Treatment Unit ("ATU") and housed some 60 to 70 inmates. The F3 unit was made up of an A and B wing and could house a total of about 256 inmates. These inmates were to be transferred in large groups directly from McCormick CI and Broad River CI to Lee CI. However, in actuality, the group identified for transfer to Lee CI numbered more than 256 inmates from McCormick and Broad River Correctional Institutions. These inmates were predominantly classified as Security Threat

Group inmates consisting of high- ranking gang members and were considered to be the "worst of the worst" in terms of documented disciplinary problems and violent behavior.

25.     The majority of the inmates where were eventually transferred to Lee CI were previously involved in a violent insurrection which occurred at McCormick CI on or about September 22, 2017.  As a result of this insurrection, many inmates were assaulted, stabbed and severely injured.

26.     At this time Lee CI was obviously ill-equipped to handle the threat level these new inmates were going to create.  As a result, Defendant Aaron Joyner, warden of Lee CI, sent numerous emails to administrative and operations personnel, including Defendant McCall, Patterson, Rushton and Stines in October 2017 concerning the list of inmates that were to be transferred in.  In fact, many of these inmates had been previously housed at Lee CI – during which time they had assaulted staff, caused and/or participated in major disturbances.  Warden Joyner directly informed Defendants McCall, Stirling, Patterson, Rushton and Stines that he was familiar with many of the inmates to be transferred to Lee and that they were the most violent throughout the prison system.  Joyner informed these Defendants that many of these inmates were gang members, had assaulted staff and had caused and/or participated in multiple disturbances.  Joyner further informed these Defendants that his facility could not handle these inmates and asked specifically that they not be transferred to Lee CI.  Despite these pleas for help, some 256 inmates were transferred into the F3 Unit at one time.  Shortly thereafter, Warden Joyner continued to contact Defendants Stirling, Patterson, Rushton, McCall and Stines, begging them to remove a short list of inmates from the 256 that had been transferred. This list contained what Warden Joyner believed to be the absolute worst of the worst disciplinary problems.  These requests also were ignored.

27.    Plaintiff is informed and believes that according to SCDC policy, prior to transferring any inmate from one institution to another, SCDC Central Classification is required to pull that inmate's record to make sure there are no cautions against other inmates and/or staff at the receiving institution ("cautions" meaning, there were no flags in their individual files stating that they could not be housed at the same institution as other certain inmates or staff).  This policy was consciously not adhered to and followed for the transfer of these inmates to Lee CI.  These inmates were transferred based on Defendant McCall's order and no precautions were taken.  This was all carried out with the knowledge and consent of the "operations staff" – consisting of Defendants Stirling, McCall, Patterson, Rushton and Stines.

28.    After completion of the transfer of inmates, Lee CI saw an immediate and significant rise in the number of assaults taking place within the facility.  Specifically, there is documentation of multiple inmate-on-inmate assaults in October 2017; one inmate-on-inmate assault in November 2017 resulting in death; one inmate-on-inmate assault in December 2017; multiple inmate-on-inmate assaults in February 2018 – at least one resulting in death; and multiple inmate-on-inmate assaults in March 2018.  These murders and assaults were significant indicators of the deficiency of security personnel and failure to follow proper policies and procedures.  These were also significant indications of just how unsafe Lee CI had become since the transfer of more than 250 inmates with violent and disciplinary records to Lee CI.  All Defendants should have been on heightened alert and made sure to not only properly staff Lee CI,  but also follow protocols in order to ensure the safety of the Lee CI staff as well as the inmates housed at the facility.  However, armed with this knowledge, the Defendants (including Stirling, McCall, Patterson, Rushton and Stines) consciously failed to take any steps to ensure the safety of the inmate population at Lee CI, including Plaintiff.

13

29.     During this time period, Lee CI was clearly the most dangerous and unsafe correctional institution in the state.  The facility was severely understaffed and basically being run by various gangs – most of which had access to all forms of illegal contraband including cell phones, drugs, and homemade knives and shanks which they sharpened freely in their cells or on the recreation yards in plain sight and sound of the understaffed officers.  At this time the inmates desiring to stay out of trouble and follow the rules had no way to protect themselves from the dangerous conditions existing around the clock.

30.     During this time the Defendants either worked in or supervised others who worked in and were responsible for the safety of the inmates who were housed in the F1, F3 and F5 Units.

31.     Prior to April 2018, each of the individual Defendants had received training on recognizing any and all potential security issues.  Additionally, these Defendants had received training that required them to ensure that security initiatives were met ensuring the inmates were not placed at risk of serious and/or deadly injuries.  In this case, Defendants consciously failed to take the actions they were trained to provide.  Further, even without training, the individual Defendants involved in this case should have easily been able to  recognize that extended staff responsibility for more than one post and lack of supervision and routine operations due to lack of front-line employees could place the inmates in severe risk of serious and deadly injuries.

32.     Prior to and during the time period in question, SCDC policy and procedure required direct supervision of all inmates located within the Lee CI,  including F1, F3 and F5 units.  This required there to be at least one correctional officer to be present in each wing of each unit 24 hours per day.  Prior to and during the time period in question there was usually

only one correctional officer working both wings of the various housing units. There were many times when there were no correctional officers working in either wing of the units, and there were many times when officers were told by inmates to not enter the units. The failure to ensure this basic SCDC minimum standard was followed was an example of the operations staff's conscious failure to ensure the safety of the inmates located at Lee CI during the time period, including Plaintiff.

33.    During the time period in question SCDC policy and procedure required that correctional officers working the housing units be properly trained to recognize any and all potential security issues. However, 55% of the correctional officers and front-line security staff had only been at the facility for less than one year – some with only weeks of experience and who were being assigned to work entire units alone. Therefore, not only were the operations staff aware that Lee CI was severely understaffed, they were grossly understaffed.

34.    Upon information and belief, SCDC's Operations staff (including Defendants Stirling, McCall, Patterson, Rushton, and Stines) and Lee CI management personnel (including Aaron Joyner, Edward Tisdale, Jr., Kenneth Sharp, Sam Ray, Arenda Thomas, Annie McCullough, Quanda Abrams, Cynthia Petty, Raymond Johnson, Michael Beady, Mark Hatton, Nicholas Marquez, Mark Bethea and Venyke Smith) consciously deviated from several security initiatives, which led to a further unsafe and unsecure environment, placing inmates at risk of serious and/or deadly injuries. These deviations include, but are not limited to, extended staff responsibility for more than one post and lack of supervision and routine operations due to lack of front-line employees. The deviations further included the Defendants' conscious failure to properly intervene when an inmate is being physically assaulted or attacked.

35.    To further exacerbate the ongoing security staffing issues, the dilapidated and deteriorating condition of the F5 Unit was not appropriate to house Level 3 inmates.  The F5 unit had been housing inmates with cells doors that did not lock or could easily be disabled for at least six years – allowing inmates to roam around at will and freely stay in cells and dorms to which they were not assigned.  This deficiency also provided no protection for the inmates housed in Unit F5 and in adjoining Units F1 and F3.  Further, the F5 Unit did not have readily accessible ports to disperse chemical agent into the housing unit should the inmates overwhelm the typically lone security officer assigned to maintain safety and security. These conditions were well known and consciously ignored by all of the individual Defendants for years prior to April 2018.

36.    Upon information and belief, the individual Defendants were well aware of the specific issues in these units as, in the months prior to this incident, as multiple similar incidents had taken place.  Defendants were also equally aware of the existence of contraband within its facility, the understaffing issues, the deplorable condition of the F5 Unit, and the inability to keep inmates supervised and protected as required.

37.    Prior to April 2018, it was well known to all Defendants that a large percentage of its inmate population carried and/or had access to cell phone and weapons, including shanks, to inflict physical harm.  Security officers declined to confront inmates seen with contraband items, and at times were directed by supervisors not to confront inmates, because they feared multiple inmates would attack them and, given the severe understaffing, no help would be forthcoming.  In the days preceding the murders and assaults, an officer in a guard tower watched as numerous inmates openly sharpened their homemade shanks in a recreation area of the west yard.  The officer reported the matter to her supervisors (including Defendants Joyner,

Tisdale and Ray), but no action was taken and no contraband searches were performed. The inmates put their freshly sharpened weapons to use a few days later. In the aftermath and investigation of the events of April 2018, as a SLED agent walked past housing units, inmates waved to her and knocked their homemade shanks and weapons on the windows of their units.

38.     Defendants knew or should have known that their conscious failure to provide adequate monitoring and security measures would result in unsafe conditions for the inmate population. Defendants were aware that prior investigations conducted by SCDC revealed repeated arguments, assaults and fights occurring within Lee CI, making it one of the most dangerous of the SCDC facilities. The incident and investigative reports created by these events were well known to Defendants – thus giving them ample knowledge of the dangerous risk of harm to inmates when they were left unsupervised, unmonitored, and unprotected.

39.     Instead of ensuring that properly trained correctional officers were assigned and staffed to Lee CI, including but not limited to Units F1, F3 and F5, Defendants consciously and consistently allowed the substantial dangers to continue and, in fact, exacerbated the dangers by transferring 250 or more inmates known to be violent to Lee CI with no regard to the safety of the inmates, including Plaintiff. In fact, Defendants consciously failed to take even the slightest measures to alleviate the risk of harm to the Plaintiff.

40.     Defendants had a federal Constitutional duty to protect inmates from violence at the hands of other persons when they knew or should have known that certain conditions presented a substantial safety risk. At all times relevant, Defendants were not only on site at the facility, and supervising those who were on site, but were also well aware that the units in question were understaffed and contained personnel who were not properly trained. They were also well aware that this created a highly dangerous situation for all inmates located in that

area. Even though they had the opportunity and obligation, they consciously failed to take any steps to ensure the inmates' safety.

41.    On or about February 2, 2017, Plaintiff Keaston D. Kinard was placed in the care and custody of Defendant SCDC.

42.    On or about November 2, 2017, Plaintiff was transferred and placed in the care and custody of Defendant at Lee CI.

43.    On or about April 15, 2018, Plaintiff was housed in the F3 Unit at Lee CI.

44.    On information and belief, at that time, there was only one correctional officer guarding the wing of the F3 Unit where Plaintiff was housed.

45.    On information and belief, assaults and fights among inmates first broke out in the F3 Unit and spread to the F1 and F5 Units.

46.    On information and belief, all interior cell doors and the doors between wings of the dorms were unlocked and open. Inmates were allowed to move improperly and in an unsupervised manner from one wing to the next.

47.    Several masked inmates attacked Plaintiff in or near his cell. Plaintiff was severely injured when he was struck in the head several times with an axe or machete-type weapon.

48.    The attacking inmates robbed Plaintiff of most of his personal possessions.

49.    Plaintiff saw and heard the attacking inmates brutally assault and murder other inmates. Some of the murdered inmates' bodies were left lying on the floor for two days or more.

50.     Officers and law enforcement personnel refused to enter the dorm or open the doors so that victim inmates could escape despite shouts and pleas for help from Plaintiff and other victim inmates.

51.     Throughout the ordeal, Plaintiff believed that he was going to be killed by the assaulting inmates.

52.     Plaintiff never was taken to a hospital or emergency department for care. Plaintiff did not receive any medical care or treatment by any SCDC staff for his severe injuries for at least eight days.  Plaintiff's repeated requests and pleas for medical treatment were ignored.

53.     Plaintiff was placed in solitary confinement or lockup after he was assaulted, causing him physical suffering and emotional distress.  While in lockup, Plaintiff was deprived not only of medical treatment, but also of basic necessities such as a sleeping mat and toilet paper and, on many occasions, even food.

54.     Plaintiff was transferred to Perry Correctional Institution on about July 24, 2018, where he remains in solitary confinement.

55.     Plaintiff has suffered great mental and emotional distress since the assaults and events at Lee CI, and continues to have vivid memories and nightmares about the events at Lee CI.  Plaintiff is now classified as requiring mental health care and treatment due to the mental and emotional trauma he continues to suffer.

56.     On information and belief, at least seven inmates were murdered by other inmates at Lee CI on April 15-16, 2018, and at more than thirty others, including Plaintiff, were attacked and severely injured.

## FOR A FIRST CAUSE OF ACTION
### VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983
### (FOURTH AND EIGHTH AMENDMENT—CRUEL AND UNUSUAL PUNISHMENT)

57.     Each and every allegation of fact contained in the paragraphs above is re-alleged herein, as if re-stated verbatim.

58.     Defendants were acting under the color or pretense of state law, customs, practices, usage, and/or policy at all times mentioned herein as administrators, supervisors and/or correctional officers who had certain duties imposed upon them with regard to Plaintiff. Additionally, during the time period in question, Defendants were well aware of the Plaintiff's constitutional rights, including his right to be free from cruel and unusual punishment.

59.     Defendants were consciously and deliberately indifferent to the Plaintiff and acted in egregious and arbitrary conduct during the time period mentioned in the facts in the following particulars:

    a.  In consciously and deliberately failing to provide an adequate or sufficient number of correctional officers in Units F1, F3 and F5 and throughout Lee CI;

    b.  In consciously and deliberate failing to prevent overcrowding in Units F1, F3 and F5 at Lee CI;

    c.  In consciously and deliberately transferring in a short period 250 or more inmates with documented records of violence, assaults and gang activity from other prisons to Unit F3 at Lee CI;

    d.  In consciously and deliberating failing to properly investigate and research the disciplinary records and cautions placed on transferred inmates, and in failing to properly classify inmates;

e.  In consciously and deliberately failing to prevent criminal gang activity and related violence in Units F1, F3 and F5 at Lee CI;

f.   In consciously and deliberately failing to adhere to the policies and procedures of SCDC;

g.  In being consciously and deliberately indifferent to Plaintiff's health and safety;

h.  In consciously and deliberately failing to provide safe cells for the inmates to be housed in Units F1,F3 and F5;

i.  In consciously and deliberately failing to adhere to SCDC's minimum standards and post orders;

j.  In consciously and deliberately failing to properly monitor, search and secure the inmates and cells in Units F1, F3 and F5 at Lee CI to prevent inmates from making or possessing contraband cell phones and homemade weapons;

k.  In consciously and deliberately failing to properly monitor and secure doors within Units F1, F3 and F5 at Lee CI to prevent the unsupervised and improper movement of inmates between areas;

l.  In consciously and deliberately failing to properly maintain and repair doors within Units F1, F3 and F5 at Lee CI to ensure they could be locked and properly secured without interference by inmates disabling the locks;

m.  In consciously and deliberately failing to require inmates to properly display identification name badges;

n.  In consciously and deliberately failing to properly perform roll call counts and ensure inmates were housed in their assigned cells;

o.  In consciously and deliberately allowing inmates to move freely between cells and units without permission or supervision of correctional staff;

p.  In consciously and deliberately allowing inmates to run the facility by moving about as they wished or remaining outside housing units even at night and on weekends or when they were supposed to be locked in their cells, refusing officers' attempts to enter cells, and directing officers to remain outside the units;

q.  In consciously and deliberately allowing inmates to openly sharpen homemade weapons and shanks in their cells on or recreation yards in full view and hearing of officers;

r.  In consciously and deliberately failing to respond with sufficient speed and force to quell a riot and prevent inmates from attacking and killing other inmates in Units F1, F3 and F5 at Lee CI;

s.  In consciously and deliberately failing to properly monitor inmates, conditions and events in Units F1, F3 and F5 at Lee CI in order to quell a riot and prevent inmates from attacking and killing other inmates;

t.  In consciously and deliberately failing to properly observe and monitor Plaintiff and other inmates by performing required cell security checks prior to and on or about April 15-16, 2018;

u.  In consciously and deliberately failing to properly hire, train or supervise sufficient employees or agents in order to ensure that inmates, including Plaintiff, were properly monitored and necessary actions taken to maintain a reasonably safe environment (such as adequate staffing, prevention of

overcrowding, prevention of criminal gang activity, performing cell security
checks, keeping doors closed, and identifying and seizing contraband cell
phones and homemade weapons).

v.  In consciously and deliberately failing to establish, enforce or follow
appropriate policies and procedures to ensure that inmates, including Plaintiff,
were properly monitored and necessary actions taken to maintain a safe
environment (such as adequate staffing, prevention of overcrowding,
prevention of criminal gang activity, performing cell security checks, keeping
doors closed, and identifying and seizing contraband cell phones and
homemade weapons);

w.  In consciously and deliberately failing to properly train employees to properly
recognize a medical emergency or serious medical condition requiring
emergency care;

x.  In consciously and deliberately failing to properly hire, train, monitor and
supervise employees or agents in order to ensure the safety of inmates located
at Lee CI;

y.  In consciously and deliberately failing to protect Plaintiff from inmates who
attacked him;

z.  In consciously and deliberately failing to provide security in Units F1, F3 and
F5 after multiple events indicating an imminent danger or riot;

aa. In consciously and deliberately failing to recognize a clearly dangerous
situation after multiple events providing notice;

bb. In consciously and deliberately failing to take sufficient action to prevent inmates from being severely injured after multiple events providing notice of danger;

cc. In consciously and deliberately failing to provide proper investigations of violent incidents which occur at Lee CI;

dd. In consciously and deliberately violating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution; and

ee. In other ways which will be discovered during the course of this litigation.

60.    Defendants, to the extent that one or more are shown to be supervisors of other SCDC employees or agents, are liable to Plaintiff because the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to Plaintiff or tacit authorization of the alleged offensive practice, and there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff.

61.    As a direct and proximate result of Defendants' acts of conscious and deliberate indifference, jointly, severally and in combination thereof, Plaintiff suffered cruel and unusual punishment and deprivations of his rights secured by the Fourth and Eighth Amendments of the United States Constitution.

62.    As a result, Plaintiff was severely injured, suffered needlessly, and suffered physical pain and suffering and emotional distress, loss of enjoyment of life, temporary and permanent scarring and disfigurement, temporary and permanent impairment and disability,

loss of income and earning capacity, and medical expenses. Plaintiff has suffered and will suffer damages now and in the future.

63.    As a result, Plaintiff is entitled to judgment against Defendants for actual, consequential and punitive damages.

64.    As a result, Plaintiff is entitled to recover attorney's fees and the costs of bringing this action. See 42 U.S.C. § 1988.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42. U.S.C. 1983**
**(FOURTEENTH AMENDMENT DUE PROCESS VIOLATION)**

65.    Each and every allegation of fact contained in the paragraphs above is re-alleged herein, as if re-stated verbatim.

66.    Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as correctional officers and/or supervisors who had certain duties imposed upon them with regard to Plaintiff. Additionally, during the time period in question, Defendants were well aware of Plaintiff's constitutional rights, including his right to due process.

67.    Defendants were consciously and deliberately indifferent to Plaintiff and acted in egregious and arbitrary conduct during the time period mentioned in the facts in the following particulars:

   a.    In consciously and deliberately failing to provide an adequate or sufficient number of correctional officers in Units F1, F3 and F5 and throughout Lee CI;

   b.    In consciously and deliberate failing to prevent overcrowding in Units F1, F3 and F5 at Lee CI;

25

c.  In consciously and deliberately transferring in a short period 250 or more inmates with documented records of violence, assaults and gang activity from other prisons to Unit F3 at Lee CI;

d.  In consciously and deliberating failing to properly investigate and research the disciplinary records and cautions placed on transferred inmates, and in failing to properly classify inmates;

e.  In consciously and deliberately failing to prevent criminal gang activity and related violence in Units F1, F3 and F5 at Lee CI;

f.   In being consciously and deliberately indifferent to Plaintiff's health and safety;

g.  In consciously and deliberately failing to provide safe cells for the inmates to be housed in Units F1,F3 and F5;

h.  In consciously and deliberately failing to adhere to SCDC's minimum standards and post orders;

i.  In consciously and deliberately failing to properly monitor, search and secure the inmates and cells in Units F1, F3 and F5 at Lee CI to prevent inmates from making or possessing contraband cell phones and homemade weapons;

j.  In consciously and deliberately failing to properly monitor and secure doors within Units F1, F3 and F5 at Lee CI to prevent the unsupervised and improper movement of inmates between areas;

k.  In consciously and deliberately failing to properly maintain and repair doors within Units F1, F3 and F5 at Lee CI to ensure they could be locked and properly secured without interference by inmates disabling the locks;

l.  In consciously and deliberately failing to require inmates to properly display identification name badges;

m.  In consciously and deliberately failing to properly perform roll call counts and ensure inmates were housed in their assigned cells;

n.  In consciously and deliberately allowing inmates to move freely between cells and units without permission or supervision of correctional staff;

o.  In consciously and deliberately allowing inmates to run the facility by moving about as they wished or remaining outside housing units even at night and on weekends or when they were supposed to be locked in their cells, refusing officers' attempts to enter cells, and directing officers to remain outside the units;

p.  In consciously and deliberately allowing inmates to openly sharpen homemade weapons and shanks in their cells on or recreation yards in full view and hearing of officers;

q.  In consciously and deliberately failing to respond with sufficient speed and force to quell a riot and prevent inmates from attacking and killing other inmates in Units F1, F3 and F5 at Lee CI;

r.  In consciously and deliberately failing to properly monitor inmates, conditions and events in Units F1, F3 and F5 at Lee CI in order to quell a riot and prevent inmates from attacking and killing other inmates;

s.  In consciously and deliberately failing to properly observe and monitor Plaintiff and other inmates by performing required cell security checks prior to and on or about April 15-16, 2018;

t.  In consciously and deliberately failing to properly hire, train or supervise sufficient employees or agents in order to ensure that inmates, including Plaintiff, were properly monitored and necessary actions taken to maintain a reasonably safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband cell phones and homemade weapons).

u.  In consciously and deliberately failing to establish, enforce or follow appropriate policies and procedures to ensure that inmates, including Plaintiff, were properly monitored and necessary actions taken to maintain a safe environment (such as adequate staffing, prevention of overcrowding, prevention of criminal gang activity, performing cell security checks, keeping doors closed, and identifying and seizing contraband cell phones and homemade weapons);

v.  In consciously and deliberately failing to properly train employees to properly recognize a medical emergency or serious medical condition requiring emergency care;

w.  In consciously and deliberately failing to properly hire, train, monitor and supervise employees or agents in order to ensure the safety of inmates located at Lee CI;

x.  In consciously and deliberately failing to adhere to the policies and procedures of SCDC to the extent which they exist;

y.  In consciously and deliberately failing to protect Plaintiff from inmates who attacked him;

z.  In consciously and deliberately failing to provide security in Units F1, F3 and F5 after multiple events indicating an imminent danger or riot;

aa.  In consciously and deliberately failing to recognize a clearly dangerous situation after multiple events providing notice;

bb.  In consciously and deliberately failing to take sufficient action to prevent inmates from being severely injured after multiple events providing notice of danger;

cc.  In consciously and deliberately failing to provide proper investigations of violent incidents which occur at Lee CI;

dd.  In consciously and deliberately violating Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution; and

ee.  In other ways which will be discovered during the course of this litigation.

68.     Defendants, to the extent that one or more are shown to be supervisors of other SCDC employees or agents, are liable to Plaintiff because the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to Plaintiff or tacit authorization of the alleged offensive practice, and there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff.

69.     As a direct and proximate result of Defendants' acts of conscious and deliberate indifference, jointly, severally and in combination thereof, Plaintiff suffered cruel and unusual

punishment and deprivations of his rights secured by the Fourteenth Amendment of the United States Constitution.

70.     As a result, Plaintiff was severely injured, suffered needlessly, and suffered physical pain and suffering and emotional distress, loss of enjoyment of life, temporary and permanent scarring and disfigurement, temporary and permanent impairment and disability, loss of income and earning capacity, and medical expenses.  Plaintiff has suffered and will suffer damages now and in the future.

71.     As a result, Plaintiff is entitled to judgment against Defendants for actual, consequential and punitive damages.

72.     As a result, Plaintiff is entitled to recover attorney's fees and the costs of bringing this action.  See 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action to which he is entitled by law to a trial by a jury of his peers.

WHEREFORE, having fully set forth his Complaint, Plaintiff prays that the Court grant by verdict or judgment an award of all damages he is entitled to recover under the law under all causes of action set forth in this Complaint, including actual damages, consequential damages, special damages and punitive damages in an amount to be determined by a jury, including attorney's fees and costs as allowed by any statute, court rule or applicable law, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PROFFITT & COX, LLP

*s/ David Proffitt*_____
David Proffitt
SC Bar No. 11193
140 Wildewood Park Drive, Suite A
Columbia, S.C.  29223-4311
Telephone:  (803) 834-7097
Fax:  (888) 711-1057
Email:  dproffitt@proffittcox.com

Attorneys for Plaintiff

April 12, 2021